And we have three cases, 16-55920, 16-55956 and 16-55967. And so I appreciate counsel in these matters. I was already, I think you came up with a good allocation of the time. I was going to come up with one for you, but I always like it when the parties talk about this. And so the information that we have is that counsel have agreed to the following, that OTHS argues first for 15 minutes, then Ascar argues next for 10 minutes, then U.S. Bank lasts for 15 minutes. Hearing no screams from either counsel table, I'm going to say that I think I've correctly cited what the agreement is, that I am, I will tell you, because when everyone has appeals, it does, you know, someone's going to get to be last, but that's just the way that is. But I decided that I will allocate one minute for each of you beyond your time, and then I'll just go back in that order for you to handle any rebuttal. And obviously, all of this is subject to the fact that the court, you know, we're basically here to have our questions answered because we have to make a decision in this case. So, but otherwise, I will keep you to time, but if any of the judges are asking you questions, please continue to answer those questions, even if they're difficult questions. But now, okay, so just so that I have this right, Ocean Towers seems to have two lawyers here, David Robinson and William Brunston, and there's two people nodding their heads, and I'm not sure which one of you is which. Okay, okay, and since we're recording, they've identified themselves. Were you going to divide your, you have 15 minutes, were you dividing that and handling separate issues, or is one person going to take argument? I will handle the argument, and I will reserve the right for rebuttal, and Mr. Brunston may, at that point, he may decide to split the rebuttal, depending on... But he's not going to speak, you're David, right, Robinson, so he's not going to do the main part of the argument, correct? All right, and obviously, if you on your own reserve any of the 15 minutes, then you've got that as well, but I'll give each person one minute for rebuttal, as far as that goes. Okay, so have I been clear enough, or does anyone have any questions? Okay, and I know, let's see, Mr. Landau, you have an assistant here for you, and... I'm not excited at all. All right, so you're allowed to use your assistant as you need. Are we accommodated to do that? We're... I see there's a woman sitting next to Mr. Landau, and I'm assuming you're the assistant. Yes, ma'am, and her name is Laura Sarasso, and I am an attorney, but he will be doing all of the bargaining, and I'm just available, for example, if you have a question about something in the brief, I'll pull it up, and you... All right, are you seated in a good place for you, or do you need to move? If you need to move your chair anyway, just let me know, okay? Thank you, ma'am. All right, all right, so I think we're ready to proceed with Ocean Towers. And so if each of you... Because we do record this, and sometimes when we're off the record, you can't hear it as much, so please make sure to state your name and who you're appearing for. Good morning. May it please the Court. My name is David Robinson, representing Ocean Towers Housing Corporation. I'll be referring to them as Ocean Towers for simplicity. Thank you. We represent the third-party defendant and appellant and appellee. We'd like to reserve five minutes for rebuttal, because we're also responding to an appeal. This morning, I would like to take a step back from the briefs and provide this panel with a common-sense overview of this matter. It's a little bit complicated, because there's three cases, but at the end of the day, there's a common thread. Here we have a key document called a recognition agreement, which provided a mechanism for the bank to protect its security. There was a mechanism where Ocean Towers, which was the co-op, had to provide notice to the bank in the event one of its tenants went into default. And that's exactly... So your tenants essentially, they move in, and Shero, who's the tenant that started all of this, was paying lease payments and also had a bank payment and had borrowed in excess of a million dollars to a bank at that time. That is absolutely correct. So your common-sense approach is you have a windfall of $1.3 million, and you have to explain to us why that's okay. Well, we don't have a windfall, Your Honor. We're like an HOA. You got paid your $1.3 million at the beginning, right? Your Honor, we didn't get paid $1.3 million. It was the prior tenant got paid. We're the HOA. We're like an HOA, Your Honor. This is a co-op. It's not that different when you think about it. It's an association that is there to help the tenants pay the mortgage, pay the expenses just as you would in an HOA. They have no dog in this fight other than... So you got the lease payments from Mr. Asghar. No, no, from Ms. Shero. Ms. Shero was the tenant. Well, no, no, no. But later when all of this happened, that Mr. Asghar was bought that without... He didn't have to pay the... He didn't have to take on her bank debt, and he got it for like $23,000 or somewhere. And then you got your past lease payments that Ms. Shero had not paid. And then there was nothing left for anyone else, right? $7,665 in arrears that Ms. Shero was. And then who issued the new shares to Mr. Asghar? Okay. What happened in this case, Your Honor, is that, once again, I was explaining that there's a recognition agreement that provides a mechanism that protects the bank when one of its tenants fails to pay rent and maintenance. So can I clarify an issue? Sure. There was a dispute below or an argument below that U.S. Bank doesn't even have right to... the right to assert any of their rights under the recognition agreement. And the court ruled one way, and then on reconsideration, the court said, oh, no, it basically reversed. Are you challenging only the way that the district court reversed itself on reconsideration, or are you actually still maintaining the claim that U.S. Bank doesn't have a right to assert any claims under the recognition agreement? Okay, let me take a step back, and I realize it's very confusing reading this from the outset. At the end of the day, the district court made a key ruling here, and that is that Ocean Towers properly followed the notice procedures in the recognition agreement to give notice to the bank to make a choice as to whether or not they want to cure the default. What we're appealing is not that issue. We think the district court got that right. What we're saying is, once we obtained an unlawful detainer judgment, by operation of law, it also canceled the shares, because under California law, the shares associated with a lease are part and parcel. What we're disputing here is that the court, the district court, took another paragraph, Paragraph 6A, and I'll call this the omnipotent paragraph, because the court took that paragraph to mean that under no circumstance could the tower exercise its right to put a tenant in default and move for unlawful detainer, when in fact the notice provision and the default provisions expressly allow for that mechanism to happen. The bank is complaining that, wait a minute, this is not fair, but we complied with the notice provisions. Now, in their appeal, you will hear from the bank that said, well, they didn't send it to Metro Cities, an entity that had gone out of business in 2006. Let's say that we agree with you that notice provisions were properly complied with because Metro Cities had gone out of business and you did a title search and tried to follow up on who's got that. Now, there's still the question of Ocean Towers canceling the lease and shares and reissuing it for the amount of $21,000. You're saying that there's no right or no obligation to protect the bank's interest in any way. No. What we're saying, Your Honor, is that we went through the steps required under the recognition agreement, which was to provide notice to the bank. We had an issue with a tenant. They weren't paying the rent. They weren't paying their maintenance fees. The rest of the tenants have to shoulder their fees. That's why the HOA, just like an HOA in condos, the co-op has the right to get the property back and release it so they can get the income. But then the bank is saying that when you get rid of those shares and sell them to someone else, then you put someone else in there. They're saying, and I guess the district court said that did not extinguish the lien, and you're saying that the language in the agreement about notice, therefore, then that extinguishes their lien. Not saying... There's still some other pending stuff that they could have... You're saying they still could have a cause of action against... There's still something floating out there that might have to do with... Because how Mr. Askar got a really good property for $23,000, and there's some claims out there contesting that there might have been some fraud or some... Those are still pending, right? And that's not our fight, Your Honor. That's between Askar and the bank. What we're saying, Your Honor, is that we followed the notice procedures under the recognition agreement. We did the best we could to let the bank know that we're about to get an unlawful detainer judgment, and that's what we did. And I get that argument that you followed the notice provisions as it set out in the agreement. Exactly. So you've done your part. Exactly. We can't do more than that. And so now I want to figure out what's left. Now the parties agree that there was an error in the district court. Yes, we all agree, and I want to spend a little bit of time on this, because... The splitting the interest and the shares and the lease. Exactly. Both sides agree that it can't be split. It can't be done. So now the question is whether a U.S. bank retained an interest in both or none at all. Exactly. That's exactly right. And what we're saying... Let's assume, for purposes of argument, moving you along, I don't mean to cut you off because your time is short, but let's assume that we agree the district court got it wrong. What would happen to this case? It would be a reversal, because I know that there are claims remaining and the parties had reached some stipulation to basically put this case before this court. Right. Would you go back on the remaining claims? Well, let me focus first on the two cases that are the subject of this appeal. If this court finds that there's indivisibility between the shares and the lease, and if this court finds that Ocean Towers properly followed the notice procedures, then as a matter of law, this court must overturn the district court decision finding that the bank has the right to the shares, which the bank will say those shares are worthless because what's really worth something is the lease. And the district court told them they don't have any security interest in the lease. They have right now interest in shares that maybe allow them to vote on who to hire as a manager, but they have absolutely nothing with those shares. You're saying... Let me make sure I understand your answer. You're saying that if there's a reversal on the district court's ruling that interest in shares were retained, it's a straight reversal, there's nothing left... Straight reversal, Your Honor. Very straightforward. So I have two questions. Sure. One is when you did the unlawful detainer in the state court, was the state court on notice that you were terminating not only the lease, but the shares? Let me explain that. As far as the state is concerned, it doesn't matter because the Civil Code Statute 4640 says once you get an unlawful detainer judgment, it's an involuntary transmission. And as a result, the shares are automatically canceled. It doesn't affect... When you move for an unlawful detainer, it's no different than if you're a landlord. The state court was not on any notice... Not involved. ...other than it didn't pay the lease. That's it. It's just a question of, did the tenant pay the lease, make the rent payment or not? Were they in arrears? Was the three-day notice properly served? Just like any other... My second question is this. In the mortgage agreement, in the original mortgage agreement, there was a deed of trust. What's the deed against? The deed is against the shares. So then there is a security interest in the share. Correct. But you just said that there's not. No, what I said was once we obtained an unlawful detainer, that judgment automatically canceled the shares by operation of law because the shares in the lease are part and parcel. The U.S. Bank... Let's say if the notice had gone to U.S. Bank, then they could have come in and then they would have an opportunity at that point to correct the unlawful detainer... They could have cured the default. Correct. They could have paid $7,000 and then they would have been fine. But your job... But what you're saying is that language says all we have to do is give notice pursuant to that section. If no one comes in and stops it, then we can proceed with an unlawful detainer and then we can re-rent it and that's the end of it. That's it. So we get it. And then issue new shares and basically you've been paid for those shares earlier by the bank and you can give them up even though the bank, by your admission, has a proprietary interest in those shares because they have a deed of trust. Correct. And once again, the shares... But the deed of trust goes away. And the deed of trust is filed. Isn't it? The deed of trust is recorded. As a lien against real estate. Correct. But you say it's not real estate. It's just the shares. No, no. I'm sorry. Let me clarify. Co-ops are more of a... I understand how this works. I'm just interested in how you... It disappears. And no court has given notice that it disappears. And maybe there's no statutory protection and that's what you're telling me because it's a corporate entity. What I'm saying, Your Honor, is that there's a mechanism where the shares and the lease are tied together. They're tethered. If you lose the lease, you lose the shares. Everything is tethered together. There was a mechanism to protect the bank. The bank had the option. They didn't have the obligation. They had the option to cure the default. But we, the HOA, the co-op, we had then the right to get the unit back so we can get our bills paid. And give it to somebody else because you'd already been paid $1.3 million for the shares. And the other person is now paying the rent and the maintenance so that the other tenants don't have to pay that. Yeah. Okay. Do you want to reserve? And then I'll give you... Yes. You've got three left and then I said I'd give you another minute, so... Thank you. Okay, thank you. Okay. Okay, you're at the podium. You're right here. Just stay put. Okay. Okay, so I think... Okay, Mr. Landau is representing Mr. Asgar,  That's correct, Your Honor. Okay. And I'd like to reserve... I'm just straight... I'm looking at the clock here. I'm not. I know. That's a good... So... And I'd like to reserve three minutes for rebuttal. Okay. I'll watch the clock so I'll tell you when you're at three. But that doesn't... But you know... You've prepared before this court before so you know that the three minutes is sort of aspirational. It's really our time. Yes. So, but... I got it. But I'll let you know. Okay? Go ahead. Bruce Landau, appearing on behalf of Safe Asgar as trustee of the Safe Asgar Family Trust. May it please the court. I want to address the one question that was made about this deed of trust. The fact of the matter is a deed of trust is supposedly securing both the proprietary lease and the shares of stock. Once the proprietary lease is terminated, and in this case by a valid unlawful detainer, then the security interest in that lease is gone. So, therefore, the deed of trust is a nullity as to the lease. Well, you're fairly aligned with what Ocean Tower just said. Would that... I mean, that's... You would like the court to reverse that part of it. Yes, and since I'm facing just the cancellation of the instrument, which is the deed of trust on the property, the fact of the matter is there was a valid unlawful detainer. Nobody has contested the validity of that unlawful detainer judgment. Well, I kind of am, okay? You come... This is Battalion from Nebraska, so I'm, you know, a little backwards. So you have a regular lease, just like everybody else, and there's an equitable interest in the leasehold in the amount of $1.3 million, roughly, by the lessee, okay? You go to the district court and you say... Well, you go to the state court and in the unlawful detainer, and you say the lessee has not paid their rent, but you don't tell the court that there's a $1.3 million equitable interest in the lease, okay? And the court says, okay, you're off. You can take property. You can take your property. So that's the conceptual problem that I have with. It's not just a regular rental agreement. It's a rental agreement with an equitable interest that's been extinguished by the court by operational law without letting the court know that that's what they've done. And to that extent, I'm the stranger to the prior transaction. And I agree with you. I come in after the fact and take a property that has already... You get the windfall. So you're... And if you do it legally, that's just fine with me. It's not so much that I get a windfall. Well, you absolutely get a windfall because you don't have to pay $1.3 million for it. And that's true, and that's the fault of the bank that could have protected its security interest in the shares of stock by filing a UCC-1 financing statement, which would have protected the bank, and they did not do that. On a timely basis, right. I don't have... Well, your client isn't completely out of the woods, though, in the sense that there's still some actions that are still in the district court, right? Well, they're always... Where... That have to do with... Because there's some... Which we're not getting into here, but there's some allegations that some people that were on the HOA board or something told this guy, hey, you... And they're supposed to get fair market value when they sell things, and so there's... This isn't gonna completely go away. We just... We're here to rule on what we rule on. Well, it may go... It may go away with regard to the cancellation of the instrument, because as long as you can't split the stock from the lease under the civil code, that portion goes away, to the extent that there may be some subsequent cause of action for a fraud which has already been dismissed, but under a tolling agreement. But it was without prejudice. Absolutely without prejudice. So they're holding that arrow in their quiver. Then we face that issue in separate litigation, but that does not obviate the fact that the instrument should be canceled and the property should be free and clear of that deed of trust. I think we under... I think we understand that. And so Ocean Towers got paid the money from the bank, and then they got lease payments from Ms. Shero until she defaulted. Then their position is that then they, under the agreement, they gave proper notice, no one showed up, and then they did the unflawful detainer, the shares are gone, the lien's gone, and your client then... There was, I guess, a... There was some... They reissued the shares for the amount of money that they were owed in back lease payments or something like that, right? Correct. And to the extent that there's a fight between U.S. Bank and Ocean Towers on a contractual right, which is the recognition agreement, that doesn't concern us. That's a dispute between the two of them. We got the property. We knew that there was a potential of a lien. Well, it affects you, though, because when the district court said that they still had a lien, and that's what... And the district court says there's a lien because they split the stock from the lease. Under Civil Code section 4640, you can't split the stock from the lease. That, we all agree on. But what you're saying is that because the parties all agree that the shares can't be split from the lease... This is Judge Wynn, by the way. Yes. If you prevail on that issue here, you're out of the case. That's correct, because... Because whatever fraudulent transfer claims, counterclaim, whatever was preserved through the tolling agreement for the parties to come up here, that's between Ocean Towers and U.S. Bank. And it may be with my client, too, but that's a separate issue to be separately decided. You'll deal with that when you're back in the district court. I'll face that one next. But to the extent that the lien ought to be off the property at the present time, the fact of the matter is once there's a valid unlawful detainer judgment, that lease terminates. There's no dispute as to that. The lease terminates. Once the lease terminates, the stock follows the lease. You can't have it any other way. And that's what the civil code says, and therefore the district court erred in not allowing the stock to be canceled and the deed of trust to be canceled with respect to the property. So there's no reason you should know this because of your client's situation, but what happened to Ms. Shiro just out of curiosity? Oh, Ms. Shiro still exists, and the bank could sue Ms. Shiro, but I think the bank dismissed the cause of action against her. She's the original borrower. They still have the rights against her under the law. I mean, do you know the circumstances of her default? That's my question. And I know that's not on the record. Oh, she didn't default. She appeared in the case. You mean the circumstances of why she didn't pay? Yeah, why she's not paying. Oh, I think it was a financial issue as... That's fine. You're at three minutes. Do you want to reserve? I'll reserve the three minutes. Okay, thank you. Thank you very much. Okay, so now we're going to U.S. Bank for 15 minutes, and so if you would state your name and appearance for the record, and then you can proceed. Thank you. Good morning. May it please the court, Dan Silitro for U.S. Bank. If I could start by addressing some of the questions that the panel's already asked that I don't think they've gotten clear responses or frankly accurate responses to. With regards to Judge Battalion's question regarding the deed of trust, it does provide security both for the lease and the shares that make up the unit 1908B in Ocean Towers. With regards to Mr. Landau saying that his client is somehow an innocent third party, that's not necessarily true. He was made aware in the Stock Cooperative Purchase Agreement, the document that Ocean Towers claims transfer the right and the property to Mr. Asghar, that there was this pending lien by the bank, that there was the likelihood of litigation. Well, and you take it by chance. Yeah, he knew that. He took it by chance. He did know that. And Mr. Asghar is also the cousin of the former owner of this property. But the law doesn't always solve every problem, so let's talk about how. I mean, obviously, if you'd gotten notice and you showed up, we wouldn't be here, right? Correct. The bank would have already paid you to mount the cure. Ms. Shiro did not initially borrow from you. It sounds like there were a number of people that were in between. And so let's talk about what U.S. Bank didn't do right in terms of the original company, I don't know, Metro... Metro Cities. Metro Cities. It sounds like it should be a phone carrier or something like that. But that being the case, there were a lot of people in between. So you were neither... The paperwork was not up to date. Well, Your Honor, I guess I'll start by saying you're correct that Metro Cities was the lender. But I don't think you... I don't think U.S. Bank could have done everything right or you should have been on the deed, which you weren't, right? Not necessarily, Your Honor. What is done in... So this loan was made by Metro Cities. Someone's in trouble at U.S. Bank. Well, I agree. For not doing what they... Certainly there's some notice issues. But if I could address that question. The original lender was Metro Cities. As was common at that time, this was a loan made in November 2006. Those loans were then aggregated and securitized, put into a trust here, that Thornburg Trust that currently still holds the interest in that loan. The trustee has changed from the original trustee, which was LaSalle, a company that was acquired by Bank of America, and subsequently U.S. Bank acquired the trustee interest for numerous trusts that Bank of America acted as trustee. So that's sort of the history of how the ownership interest to U.S. Bank. With regards to what notice they should have provided, I agree that it would have been in the best interest of the banks that every time the loan changed ownership, that notice be provided to Ocean Towers as well as the borrower who would, of course, receive notice of the change in a loan servicer, for instance, so they could make their loan payments. Well, Bank of America had the deed of trust filed. Why don't you have the deed of trust filed in your name? That's... And what happens, Your Honor, is first, one, I would say under the recognition agreement, there's no requirement that any notice... that a change in the address where such notices are to be provided is given. With regards to the recording of a assignment of deed of trust, what those are recorded for and the purpose those are recorded are basically in advance of a foreclosure proceeding. So they would be recorded along with the substitution of the foreclosure trustee if that's going to change. So that's why Bank of America filed it. Correct. Because they were getting ready to foreclose on her. Correct. And then when they decided not to foreclose her, they sold the... You bought the mortgage and you weren't intending to foreclose, so you never filed the deed of trust. Because, Your Honor, in May of 2011, the default on the loan to Shiro was cured and therefore as of May 2011, there was no longer any foreclosure proceedings. The loan was current. So therefore, there would be no reason... And after these events went down and the loan went back into default, then U.S. Bank did record that notice of an assignment. But if I may, with regards to that assignment that was on, that is recorded in the title documents, the ones that Ocean Towers Counsel said he reviewed, it does identify Bank of America, but it also provides the address to which notices should be provided and that's care of the loan servicer, Select Portfolio Servicing. Select Portfolio Servicing is still the loan servicer and has been since June of 2010. It remains so whenever the loans transfer from Bank of America as trustee for the trust to U.S. Bank as trustee for the trust. But the Wolf Firm sent notice to Select Portfolio. That's actually disputed, Your Honor, because as I pointed out, in May of 2011, this loan was... the default on the loan was cured. Therefore, there's a rescission of the notice of default. There's no longer any foreclosure proceedings. The Wolf Firm is retained as the foreclosure trustee for the limited purpose of carrying out the foreclosure sale. Whenever there's no longer a foreclosure sale or a foreclosure proceeding active, what happens is the Wolf Firm or any other foreclosure trustee closes the file on that. And the reason that's relevant in this case as was testified to by the employee at Select Portfolio, which said she did not recall receiving it, had no record of receiving it, it's not in her email. And the reason that... and the reason I point that out is because communications between the Wolf Firm and Select Portfolio do not go through email. And the reason that is, is because multiple people at each, whether it's at the foreclosure trustee or at the loan servicer, handle the loan. Therefore, whenever you call up or anybody calls up, they want to be able to pull up a system that has all of the notes relating to that loan. Where there's no active foreclosure, that system's not in place. And there's no indication... But to me, on the notice issue, I mean, the parties can fight about whether their attempt was sufficient or not, but, you know, you have to basically... this is a contractual obligation to comply with notice procedures that are specifically set out. And I don't see where there's a violation in terms of the plain requirements set out in the recognition agreement, right? They were obligated to notify Metro Cities, and... That's correct. Nobody disputes. Metro City went out of business. They ran a title report. They identified Bank of America and the Wolf Firm. They sent notices to those folks. So this whole thing happened because U.S. Bank didn't notify them that you're now holding the loan at the tail end of it, and that's why you got cut out of the loop. I disagree with... First off, they keep repeating this idea that Metro Cities is out of business. That's just not true. There's nothing... They don't cite anything. Metro Cities was acquired by another entity, was still located at the same address, was contacted by Mr. Orlando at Ocean Towers with prior default. He knew exactly how to contact them. He had done so... But when they ran the title report, did Metro Cities pop up on that title report? No, and again, in the title document, as Judge Vitale was noting, there is an assignment that was recorded prior to the review of the title search done by Ocean Towers Council. And in that... In those title documents, there's an assignment to Bank of America and identified select portfolio as the entity to contact relating to the loan. So I... So the question is whether if the... If the notice... If it requires... You're saying they had to do more, and they're saying, we did what it said we had to do, it's contractual, and you needed to do more to protect yourself. I would argue two things. One, if the court is gonna say you have to follow the strict language in the contract, it requires that unless there's a change of address, which there wasn't, then you have to send notice to Metro Cities, the lender. They didn't do that. If the court's gonna say that because the loan had actually been transferred and they're required to then give notice, then they had to use good faith efforts to identify the proper entity, which was part of the title documents that they reviewed. And the reality is that this was a scheme just to wash away that lien and transfer it back to a family member. And that leads me to my next question, which I asked Ocean Towers Council as well. I want to figure out what's left in this case. So let's say we don't agree with you on the notice issue and that they properly complied with the requirement under the recognition agreement. You agreed that the district court erred in splitting the interest in the shares and the lease, right? Correct. But you want us to reverse... You want us to find that U.S. Bank retained an interest in both. Correct. And I would start by saying that the recognition agreement provides separate security. No one argues that the recognition agreement is in place to provide security for the bank. It provides several things. It provides that neither the co-op or the borrower is going to further encumbrance the property. It provides that the bank has the right but not the obligation to cure a default. And the third one is, that paragraph 6, that they can't cancel the shares or terminate the lease unless and until the loan is fully repaid. And that's correct. If you can't... Let's say it only applies to the shares, as the district court concluded. If you cannot cancel the shares and the natural consequence of terminating the lease is canceling the shares, then you can't terminate the lease either. You can't take a step and do something which has the natural consequences of leading to a cancellation of the shares. And if you disagree with the district court's interpretation or reading of Section 6, then the case doesn't end. It'll be a reversal of the district court's ruling, but you still preserve certain claims and you'll just go back and proceed in the district court on those claims? Is that what will happen? Well, if the court rules against the bank on the breach claims... I'm not sure whether there would remain a fraud claim because it depends on how the court rules and whether... if Ocean Towers simply took an action that was consistent with the contract or not. So I just want to be sure I understand. This is kind of novel to me. If...if Ocean Towers had contacted Metro Cities Mortgage Inc. as they were required to under the contract, you would have been notified? Well, you know, there's no evidence of the record, but Metro Cities or the entity that acquired a prospect in other cases does forward those notifications so yes, I believe so. Do you want to retain any of the time for... I will reserve the last ten minutes. My next question is, but didn't basically... I'm looking back to the district court's opinion. If the district court says that... that met... that Ocean Towers had fulfilled its notice responsibility, then by implication, the court accepted and made a fact finding that Metro Cities was no longer in business. No, I think they... I think what the court concluded was that Metro Cities no longer was the beneficial interest in the note, but that's different from saying that they're out of business because they're not... they were not out of business. There's no evidence of that. There could be no evidence of it because they were acquired by another entity. So unless you're using out of business to mean acquired by another company, but I don't think that's what opposing counsel is really referring to. Okay. Okay, so you still have $240,000 plus the one. And, um... All right. And then, okay, so we're going to go now to rebuttal from... and I think it's, uh, Mr. Brunston that's coming for Ocean Towers. And I'm gonna try to take only one or two minutes and then let Mr. Robinson address technical problems. Okay, I'm trying to... I have to remember on this. I know you didn't reserve your full five. Was it four? How much did he have left? Okay, so it was $356,000, and I said I'd give one, so if you... $256,000 or $356,000? Oh, $256,000. Oh, okay, so if you take two minutes, then that leaves him one and one. You get that? I'll try to talk real fast. All right. Well, I don't know if that helps, but go ahead. What I want to get to is the concern of the court that there was some windfall and that Ocean Towers got $1.3 million and the bank is getting... taking advantage of. Not true. I agree with you. I misspoke, okay? Because you were already paid. But it goes back for... Ocean Towers owns the fee interest in all these units. When you want to buy an expensive unit in there, what you buy is a lease in shares. Mrs. Schiro bought it from somebody else, let's say hypothetically, for $1.2 million. They got the $1.2 million. All Ocean Towers ever gets from whoever owns the unit is the rent to pay the mortgage and pay the gardener and pay the insurance. You sold to Ascar only the amount that you were owed. No, let me answer... And there was nothing left for the bank. Is that what happened? That's the next... So then... So the first thing is we never got $1.3 million. All we eventually got in the Ascar sale was the amount in arrears, which was about $20,000, included some attorney's fees. Right, that's what I'm saying. You cleared up the arreared amount, but you didn't... There was nothing left for the bank. We did get that. That wasn't some windfall. That was rent that was owed, and if we don't get that, then all the other 316 shareholders have to make up the $20,000. Now, what happened in the unlawful detainer case? Because Your Honor made a good point, which is... Well, I always do, because I'm the judge. Exactly. Exactly. When all the judge did is say, in that case, Ocean Towers, you're correct, Schiro no longer is entitled to possession of this unit because she wasn't paying her rent. In fact, we had a downturn in the economy, and that's why she didn't pay it, and she didn't pay the loan. So what did Ocean Towers do? To make crystal clear to Mr. Ascar, we got a unit back after the UD, and it's subject to a cloud on title. If you look at the stock co-op purchase agreement that's in the record, you will see Ocean Towers said to Mr. Ascar, the reason why you're getting this for $20,000 is you're probably going to get sued by the bank. And so we're not warranting title, we're not giving you any title insurance, and it's likely to happen, and we want you to indemnify us when it happens. And it's happening right now. So they made it crystal clear, and now the bank can come in and protect its rights, whatever they are, in litigating with Mr. Lando. But the final thing I want to say is, we got no windfall out of this. And the judge correctly concluded that we're not responsible for the damages. We shouldn't be responsible for damages. It's a fight between the bank and Mr. Ascar. And that's all I have to say. Thank you. Okay. So, Mr. Robinson, you have a minute and 20 seconds. Yes. Very briefly, I want to address the point that Metro Cities was out of business. I cite to the record ER-52. There's an undisputed fact that says Metro Cities is out of business, and the bank admitted it. So it's a non-issue in this case. The other point I want to address is that the bank states that the SPS address was in the online search conducted by Mr. Hamburg. If the court looks at the record at ER-574 through 576, it will not find the SPS address. What it will find is the Wolf Firm identified as the trustee for Bank of America. Thank you. Okay, and you, I think, are taking the position that taking that second step was actually more than you had to do or something, or to go to the Wolf Firm, or you said, we not only, you complied when you did the first thing, but you did more, and then that was enough. We complied by sending the notice to the Wolf Firm that was identified as the trustee. Okay. In the title search. Thank you, Your Honor. All right, so Mr. Landau is coming back to the podium, and he had about three minutes left, or how much did he have? 350. 350? Right. And then I, you can have, if you really want to talk a lot, which I don't know that, so then you, is that including my minute, or? Yes, totally 350. With my minute. Okay, so you have 350 left. Okay. Yes, Your Honor. I want to address what needs to go back to the district court. To the extent that the court did not cancel the instrument, which is the deed of trust, I think if this court reverses, then that cancels, with respect to, say, FASCAR, that cancels the deed of trust, and we have that property free and clear of that lien. The other thing that goes back to the district court is the finding that Ocean Towers breached the recognition agreement. If that gets reversed also, then that's done, and we're finished with this case, other than what other potential causes of action are against everyone that's still reserved. I think that takes care of... Well, we don't care if you're all done down below. Right. We don't. We care about the discrete legal issues that each one of you, and life has consequences, so whatever's left for all of you, we don't care. I mean, not that we don't care as people, but we don't, we won't, we're not gonna, that's not how we decide cases. And our discrete issue is that the cancellation of the deed of trust has to occur because there's no question that the unlawful detainer was valid, that the judgment occurred, there's a finality of that judgment, and to the extent that that happens, then under Civil Code Section 4640, the shares get cancelled by operation of law, and therefore, the lien is off the property, and my client gets the property free and clear of the lien. That's what happens with respect to my client as it relates to U.S. Bank. Okay. The one other point that everyone is ignoring in terms of notices is that it was clear that the Wolf Firm was named as the agent for the servicer, and therefore, by giving notice to the agent, that gave notice to the servicer, so I think Ocean Towers complied with the notice provisions. And I, unless the court has any other questions, I'll submit. I don't think we appear to. Thank you, Mr. Landau. Thank you. Okay. So then... He has 336? Okay. You have 336 left. Thank you. I'd like to start by pointing out the document that's part of the title document, the Corporation Assignment of Deed of Trust that identifies Select Portfolio Servicing is Volume 4 of U.S. Bank's Supplemental Excerpts of Record at pages 995 through 997. With regards to the agent, the Wolf Firm, it is an agent for a limited scope as the foreclosure trustee. The fact that it can receive any notices, that's not correct with regards to or has any that its agency goes outside of that limited scope is just simply incorrect, and it's not the entity identified within the recognition agreement to receive any notices. With regards to the Metro Cities entity, again, if out of business means that the entity Metro Cities no longer exists, that's correct. It was acquired by an entity that retained that was still located at the exact same address. So, I mean, it's really a non-starter. And then I'd like to finally say, I know we focused on the notice here, but what I would say is as the District Court concluded, regardless of whether they comply with the notice obligation, does not allow Ocean Towers to avoid their obligations in the rest of the recognition agreement, including in paragraph six, which the only way that Ocean Towers can get around paragraph six is essentially read it out of the contract. What we're doing here isn't much different than any condominium building in any HOA organization would face if they had a defaulting owner. They wouldn't be able to then take and be allowed to extinguish the underlying lien that the bank had. They would basically be, any purchaser would essentially be buying with the obligation to the bank. So this idea that it's, I think they refer to it as commercially unreasonable, that just simply is incorrect. If that were the case, then every single condo and every single HOA across the state of California that had a unit owner that wasn't paying their fees would have the same liability as the HOA if they have to, if they're not receiving those fees and the bank has the senior lien. Here, all that's happening whenever you're requiring them to pay back the bank if they decide to take back the lease and the shares is to pay back the bank. That's it. That's what they provided to the lender through this recognition agreement in exchange for the bank making that loan within a co-op. Now the fact that the co-op has some different, is a different property ownership. But they didn't sign anywhere on the loan agreement, right? I'm sorry? No, but the recognition agreement does reference the loan and the security and I would argue that those documents would be incorporated into the recognition agreement. As Mr. Orlando who signed these documents on behalf of Ocean Tower stated, this recognition agreement was part of a group of purchase agreement documents that included the deed of trust, the loan, the pledge agreement, the pledge holder agreement. So it was a suite of documents that was all signed together. Excuse me, Ocean Tower is not on the loan itself. That's correct. Thank you. Unless the court has anything further. I don't think we seem to. I think that I haven't conferred with the panel, but I think I can speak on behalf. I think that all of you did a very good job of presenting your best arguments on all of the issues and I think that we while this is complicated, I think that we understand what all of you have stated and thank you for your arguments in this matter. We've concluded argument. This case will
judges: Callahan, Nguyen, Bataillon